IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | Criminal No.  3:24-CR-62 (TWD) |
| ) | |
| **Plaintiff,** ) | Rule 11(c)(1)(C) Plea Agreement |
| ) | |
| v. ) | |
| ) | |
| **VULTO CREAMERY LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, Carla B. Freedman, United States Attorney for the Northern District of New York, Michael F. Perry, Assistant United States Attorney, and James T. Nelson, Senior Trial Attorney, United States Department of Justice, Consumer Protection Branch, and the defendant, **VULTO CREAMERY LLC**, personally and by the defendant's attorneys, Douglas A. Fellman and David I. Sharfstein, have agreed upon the following:

SCOPE

1.  This document, including any exhibits thereto, contains the complete and only plea agreement (hereafter, "Agreement") between the United States Attorney for the Northern District of New York and United States Department of Justice, Consumer Protection Branch, and the defendant. This Agreement supersedes and replaces any and all prior formal and informal, written and oral, express and implied, plea agreements between the parties. No other Agreement, understanding, promise, or condition between the United States Attorney for the Northern District of New York and United States Department of Justice, Consumer Protection Branch, and the defendant exists, except as set forth in this Agreement.

2.  This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States

1

or any of its agencies of any administrative or judicial civil claim. The obligations of this Agreement are limited to the United States Attorney for the Northern District of New York and United States Department of Justice, Consumer Protection Branch, and cannot bind any other federal, state, or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

## CORPORATE AUTHORIZATION

3.  The undersigned representative, as sole owner of Vulto Creamery LLC, is authorized to enter into this Agreement on behalf of the defendant and thereby bind the defendant to the terms of the Agreement as evidenced by the resolution of Vulto Creamery LLC attached to, and hereby incorporated by reference in, this Agreement as Exhibit 1. The defendant further agrees and acknowledges that the plea of guilty will be entered by the defendant through the undersigned representative, Johannes Henricus Vulto, and that Johannes Henricus Vulto is authorized to enter the plea of guilty on the defendant's behalf.

## THE PLEA

4.  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the defendant will enter a plea of guilty to a one-count Information, in which the defendant is charged with the strict liability misdemeanor offense of Introduction of Adulterated Food into Interstate Commerce, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(1). This offense is a class A misdemeanor offense under 18 U.S.C. Section 3559(6). Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Government and the defendant agree that a sentence of 12 months' probation and a special assessment of $125 is the appropriate disposition of this case (hereinafter referred to as "the agreed-upon disposition"). The United States Attorney's Office and the defendant agree that, to the extent the agreed-upon disposition departs from the applicable sentencing guidelines range, that departure would be made for justifiable reasons under U.S.S.G. § 6B1.2(c)(2). In particular,

the agreed-upon resolution is reasonable and appropriate under the unique combination of facts and circumstances relating to the defendant, the offense of conviction, and related relevant conduct.

## ELEMENTS OF THE CHARGE

5. The corporate signatory for defendant corporate entity has personally read the charge to which the defendant is pleading guilty, and the charge has been explained to the corporate signatory for defendant by the defendant's attorney. Furthermore, the defendant understands that the following are the elements of the offense of introduction of adulterated food into interstate commerce, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(1), to which the defendant agrees to plead guilty. The defendant admits that the defendant's conduct satisfies each and every one of these elements:

> <u>First.</u>     That the defendant, a person, caused the introduction of, or delivered for introduction, into interstate commerce, articles of food; and
>
> <u>Second.</u>  That the food was adulterated.

## POTENTIAL PENALTIES

6. The defendant understands, agrees, and has had explained to him by counsel that the provisions of law pursuant to which the defendant is pleading guilty, to wit, violation of Title 21, United States Code, Sections 331(a) and 333(a)(1), provide for the following possible statutory maximum sentence, as applicable: a fine of $500,000; a special assessment of $125; restitution as ordered by the Court; one (1) year supervised release; and a five (5) year term of Court supervision.

7. The defendant agrees to pay the mandatory special assessment at the time of sentencing in a payment acceptable to the Clerk of the United States District Court, and further understands that the defendant will be required to do so as a condition of this Agreement. Failure

to comply with this requirement, however, will not constitute grounds for the defendant to withdraw the defendant's plea of guilty.

## WAIVER OF RIGHTS TO APPEAL AND COLLATERAL ATTACK

8. The defendant waives (gives up) any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255, to appeal and/or to collaterally attack the following (except that the defendant does not waive the right to raise a claim based on alleged ineffective assistance of counsel):

a) The conviction(s) resulting from the defendant's guilty plea;

b) Any claim that the statute(s) to which the defendant is pleading guilty is unconstitutional;

c) Any claim that the admitted conduct does not fall within the scope of the statute;

d) Any sentence consistent with the agreed-upon disposition described above or any less severe sentence;

e) Any order of forfeiture or restitution imposed by the Court that is consistent with governing law and is not contrary to the terms of this Agreement.

## ADVISORY SENTENCING GUIDELINES

9. The parties agree that the fine provisions of the United States Sentencing Guidelines (U.S.S.G.) do not apply to organizational defendants for misdemeanor violations of the Food, Drug, and Cosmetic Act, pursuant to U.S.S.G. § 8C2.1.

10. Notwithstanding paragraph 9, the parties have consulted U.S.S.G. § 8C2.2 and it is readily ascertainable after a preliminary determination of the minimum of the guideline fine range that the organization cannot and is not likely to become able (even on an installment schedule) to pay such minimum guideline fine.

11. The parties further agree that no financial penalty as to Vulto Creamery LLC is necessary in this case as a consequence of the fine of $100,000 to be paid in Case No. 3:24-CR-61-TWD (NDNY), a related case against Johannes Henricus Vulto.

## FOIA WAIVER

12. The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. Sections 552, 552A.

## THE UNITED STATES ATTORNEY'S AND DEPARTMENT OF JUSTICE'S OBLIGATIONS

13. The United States Attorney for the Northern District of New York and Department of Justice, Consumer Protection Branch, agree that they will bring no additional criminal charges against the defendant based on conduct described in the information in Case No. 3:24-CR-62-TWD and/or in the paragraphs of this Agreement entitled "Stipulation of Facts," occurring before the date on which the defendant signs this Agreement, except for any crime of violence and any crime unknown to the United States Attorney for the Northern District of New York or Department of Justice, Consumer Protection Branch prior to the time this Agreement is signed by the parties.

14. The United States agrees that at the time of sentencing it will fully inform the Court of the nature, extent, and value of any cooperation rendered by the defendant.

## STIPULATION OF FACTS

15. The defendant admits the following facts, that those facts demonstrate the defendant's guilt for the offense to which the defendant is pleading guilty, and that there are no facts establishing a viable defense to that offense:

16. The defendant admits and agrees that beginning in or around December 3, 2014, in the Northern District of New York and elsewhere, and continuing until in or around March 2017,

5

it did cause the shipment in interstate commerce of adulterated food, namely cheese made from unpasteurized milk produced at Vulto Creamery, in violation of 21 U.S.C. §§ 331(a) and 333(a)(1).

17. Specifically, in or around June 2012, Johannes Vulto ("Vulto") opened Vulto Creamery LLC ("Vulto Creamery"), a facility that manufactured and sold cheese made from unpasteurized milk. At all relevant times, the manufacture of cheese from unpasteurized milk was legal, but the shipment in interstate commerce of food made under insanitary conditions violated the law. As the general manager and owner of the creamery, Vulto managed the business and supervised a staff that, over time, consisted of a total of four part-time employees until it closed on or about March 2017 following an outbreak of listeriosis caused by contamination at the creamery.

18. Both before and while Vulto Creamery was in business, Vulto registered for an upstate New York cheese publication which issued monthly newsletters. In these newsletters, Vulto received a range of information contained in articles and commentary. Among this information was articles regarding other cheese facilities that conducted recalls or shut down because of positive environmental swabs for Listeria. In addition, as a dairy producer, Vulto was required each year to attend safety meetings hosted by the New York State dairy regulator. At one such safety meeting in 2014, Vulto was informed that raw milk cheese is 112 times more likely to cause listeriosis than pasteurized cheese, and that, in some circumstances, the discovery of Listeria in locations at a food facility, even in locations not in direct contact with food, had resulted in a product recall.

19. From on or about July 28, 2014, to on or about February 19, 2017, Vulto at times swabbed areas throughout Vulto Creamery as part of Vulto Creamery's program to monitor the environment for pathogens. He sent the swabs to a laboratory to be tested for Listeria species. During this period, Vulto swabbed on 20 different occasions, and found positive results for Listeria

6

species in Vulto Creamery on 18 of those occasions. Vulto caused to be tested a total of 198 swabs, 54 of which (more than 27 percent) were positive for Listeria species.

20. Even though Vulto received guidance from an individual active in the dairy food safety space (Individual #1) that testing food contact surfaces was not required, Vulto periodically tested food contact surfaces. Ten of those 54 tests of food contact surfaces at Vulto Creamery (more than 18 percent) were among the results positive for Listeria. Vulto stopped testing food contact surfaces as of June 17, 2015.

21. Vulto took certain remedial actions following a positive test, including but not limited to extra cleaning and sanitizing the affected area. However, he did not immediately retest the area that he cleaned and sanitized to ensure that Listeria species was not still present. Instead, he resumed producing cheese and did not test the area again for Listeria species until the next time he performed a routine swab of the facility.

22. Beginning in or about March 2014, Mr. Vulto contacted Individual #1 for advice regarding initiating his environmental monitoring program, and after that conversation, Vulto decided to take 10 samples a month for Listeria species. There are more than 20 species in the Listeria genus family, and Listeria monocytogenes is one species that can cause the illness listeriosis in humans. Vulto received indications from several sources, including Individual #1 and Individual #2, that he should set and follow a monthly environmental sampling protocol. On or about March 10, 2015, Vulto wrote Vulto Creamery's Environmental Sampling procedure, stating: "Samples of Listeria genus are taken monthly."

23. On or about December 29, 2015, Vulto approved Vulto Creamery's "Environment Cleaning and Maintenance of the Creamery," which provided: "Ten swabs are taken each month . . . . Results are used to correct problems and prevent the spread of the pathogens from the environment into the products." Notwithstanding this written procedure, Vulto failed to swab at

all during several months. He swabbed eight times in 2015, six times in 2016, and once in 2017 prior to the closure of Vulto Creamery in March 2017.

24. On or about January 3, 2015, having had three swabs test positive for Listeria species on his wooden aging boards and one swab test positive on his cheese wash brushes, Vulto emailed an employee an article detailing a recall caused by Listeria on cheese brushes and aging boards. In the email, Vulto told his employee that deviations from the Listeria testing protocol can make the risk of cheese contamination much greater.

25. At times, Vulto sought feedback from those active in the dairy safety space. In the spring of 2015, Vulto corresponded and met with an individual with a PhD and undergraduate and graduate degrees in food science (Individual #2) to discuss his environmental monitoring results. This person provided feedback to Vulto, some of which Vulto implemented. This individual advised Vulto to continue to sample monthly and re-evaluate the frequency of testing if he received negative results for three straight months. Vulto never had negative results for three straight months.

26. In the fall of 2015, Vulto invited Individual #1 and another colleague of Individual #1 ("Individual 3") to his facility. Individual #1 and #3 provided feedback to Vulto on cleaning techniques and products, which Vulto implemented and purchased. They also took environmental swabs at Vulto's request. After the 2015 visit, Vulto emailed Individual #1: "I am anxiously awaiting the results of the swabs. Hope I will not have too many sleepless nights." At the time, Vulto had swabbed Vulto Creamery 12 times over the past 15 months, and had received positive results for Listeria species 11 times.

27. Later in November 2015, Individual #1 provided a list of sanitation recommendations, which Vulto implemented. In January 2016, Vulto invited Individual #1 and #3 back to the facility to take additional environmental swabs at Vulto' s request.

8

28. On or about December 2, 2015, Vulto completed a two-day food safety course at a university active in the dairy space, where he was told that Listeria monocytogenes had a 20% mortality rate, and that non-pasteurized products were 150 times more likely to cause disease outbreaks.

29. On or about March 7, 2017, after the Food and Drug Administration linked Listeria monocytogenes in Vulto Creamery's cheese to an outbreak of listeriosis, Vulto shut down Vulto Creamery and issued a partial cheese recall that was expanded to a full recall within weeks. The Listeria monocytogenes outbreak from Vulto Creamery's cheese resulted in eight hospitalizations and two deaths.

30. Following the recall, Vulto took responsibility by, among other things, immediately closing his facility, assisting the FDA's investigation into the outbreak, agreeing to a permanent injunction on manufacturing food, and complying promptly with investigative requests.

31. Vulto's conduct described above was in the course and scope of his employment at Vulto Creamery and done in part to benefit Vulto Creamery.

## VIOLATION OF AGREEMENT BY THE DEFENDANT

32. The defendant further agrees that if the defendant violates the terms of this Agreement, the United States has the option to declare the Agreement null and void. In the event the United States exercises its option to declare the Agreement null and void, the United States will be completely released from all of its obligations under this Agreement and the United States will be free to file additional charges against the defendant. In the event, however, the United States exercises its option to declare the Agreement null and void, the defendant will not be allowed to withdraw from any previously accepted guilty plea.

33. The defendant also agrees to waive any and all double jeopardy rights and the applicable statute of limitations should the United States decide to reinstate any charges against

the defendant after a violation of this Agreement. The defendant agrees, however, that under such a circumstance the defendant will not be allowed to withdraw any previously accepted guilty plea.

34. Whether or not the defendant has violated the terms of the Agreement shall be determined by the Court. The burden of proof shall rest with the United States to establish by a preponderance of the evidence that the defendant violated the terms of the Agreement.

## ACKNOWLEDGMENTS OF THE DEFENDANT AND DEFENSE COUNSEL

35. The defendant understands that by entering a Plea of Guilty, the defendant is waiving certain of the defendant's rights. Specifically, the defendant understands that by pleading guilty the defendant is waiving the following rights, among others:

   a. The right to plead not guilty or persist in the plea of not guilty if already made. If the defendant persisted in a plea of not guilty to the charges the defendant would have the right to a public and speedy trial.

   b. The right to a trial by jury. The defendant has an absolute right to a jury trial. The jury would be composed of twelve persons selected at random. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the defendant is presumed innocent, and that it could not convict the defendant unless, after hearing all the evidence, it was persuaded that the United States had met its burden of proving the defendant guilty beyond a reasonable doubt. The defendant could also ask for a trial by the Judge instead of a trial by a jury.

   c. The right to the assistance of counsel at trial. The defendant has the right to be represented by an attorney at every stage of the proceedings, including trial. If the Court finds the defendant is unable to afford an attorney, one will be appointed to represent the defendant at no cost to the defendant. By entering a guilty plea pursuant to this Agreement, the defendant will not be represented by counsel at a trial on these charges since there will be no trial.

    d. The right to confront and cross-examine adverse witnesses. At a trial, the United States would be required to present its witnesses and other evidence against the defendant. The defendant would be able to see and hear those government witnesses and the defendant's attorney would be able to cross-examine them. In turn, the defendant's counsel could present witnesses and other evidence on the defendant's behalf. If the witnesses for the defendant refused to appear voluntarily, their attendance could be required through the subpoena power of the court.

    e. The right against compelled self-incrimination. At a trial, the defendant would have a privilege against self-incrimination so that the defendant could decline to testify, and no inference of guilt could be drawn from the defendant's refusal to testify. If the defendant desired to do so, the defendant could testify on the defendant's own behalf.

  36. The defendant understands that by pleading guilty the defendant is waiving all the rights set forth in the prior paragraphs. The defendant's attorney has explained to the defendant those rights and the consequences of the waiver of those rights.

**AGREED:**

**Defendant's Attorney:**

37.  I have read this Agreement and discussed it fully with my client, and I am satisfied that my client fully understands its contents and terms. It accurately and completely sets forth the entire Agreement. I concur in the guilty plea as set forth in this Agreement. No threats, promises, or representations have been made, nor agreements reached, express or implied, to induce my client to plead guilty other than those stated in this written Agreement.

Date: 3/5/24                            _____
                                        David I. Sharfstein
                                        Attorney for Johannes Henricus Vulto

**Corporate Acknowledgement of Plea Agreement:**

38. I am duly authorized on behalf of Vulto Creamery LLC to execute this Plea Agreement, and to take all such actions as may be necessary to effectuate this Plea Agreement. Vulto Creamery, through its duly authorized representative(s), has read this Plea Agreement and any attached exhibits in their entirety and has discussed them fully in consultation with Vulto Creamery LLC's counsel. Vulto Creamery LLC acknowledges that this Plea Agreement fully sets forth Vulto Creamery LLC's agreement with the United States as it relates to the charges in the Information. Vulto Creamery LLC further states that no additional promises or representations have been made to Vulto Creamery LLC by any official of the United States in connection with the charges in the Information.

Date: 3/5/2024

_____
Johannes Henricus Vulto
On behalf of Defendant Vulto Creamery LLC

_____
Douglas A. Fellman
David I. Sharfstein
Hogan Lovells US LLP
Attorneys for Defendant Vulto Creamery LLC

**United States:**

39. On behalf of the United States of America, I accept and agree to this Plea Agreement.

Date: 3/5/2024

By: *[signature]*

Michael F. Perry
Assistant United States Attorney
United States Attorney's Office
Northern District of New York

Date: 3/5/2024

By: *[signature]*

James T. Nelson
Senior Trial Attorney
United States Department of Justice
Consumer Protection Branch

14

# Exhibit 1

## Corporate Resolution of Vulto Creamery LLC

WHEREAS, Vulto Creamery LLC is a domestic limited liability company formed under the laws of the State of New York, has been assigned New York Department of State identification number 3949205, and is currently listed as an active company according to the New York Department of State; and

WHEREAS, Johannes Henricus Vulto incorporated Vulto Creamery LLC in or around approximately May 2010, has served as the sole member of the entity since its incorporation (vested with full authority and discretion to make all decisions with respect to the company's business), and has served and remains the registered agent for Vulto Creamery LLC; and

WHEREAS, Vulto Creamery LLC (including Mr. Vulto, in his capacity as the sole member of Vulto Creamery LLC) has fully considered the terms of the resolution with the Department of Justice of its investigation of Vulto Creamery LLC;

NOW, THEREFORE, BE IT RESOLVED THAT, Vulto Creamery LLC hereby approves the proposed resolution with the Department of Justice, and that Vulto Creamery LLC hereby empowers and authorizes Johannes Henricus Vulto (in his capacity as sole member of Vulto Creamery LLC) to: (1) execute the plea agreement with the Department of Justice on behalf of Vulto Creamery LLC; (2) enter a guilty plea on behalf of Vulto Creamery LLC before the United States District Court for the Northern District of New York; (3) accept sentence of said court on behalf of Vulto Creamery LLC; and (4) take any other actions, or enter into any other agreements, as may be necessary or appropriate in Mr. Vulto's sole and exclusive judgment, to effectuate the matters covered by this Corporate Resolution (clauses (1)-(4), collectively, the "Authorizations");

FURTHER RESOLVED THAT, in furtherance of the foregoing, Mr. Vulto, in his capacity as sole member of Vulto Creamery LLC, hereby approves: (1) the proposed resolution with the Department of Justice, and (2) each of the Authorizations;

FURTHER RESOLVED THAT, any actions of Mr. Vulto that would have been authorized by the foregoing resolutions except that such actions were taken prior to the approval and adoption of this Corporate Resolution are hereby each ratified, confirmed, approved and adopted as actions on behalf of Vulto Creamery LLC.

_____  12/22/23
Johannes Henricus Vulto       Date
On behalf of Vulto Creamery LLC
(and in his capacity as sole member)


_Melissa A. Angevine_          12/22/2023
Notary Name                    Date

MELISSA A. ANGEVINE
Notary Public, State of New York
Delaware County, No. 01AN6424147
My Commission Expires 10/25/20__